**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
UNITED STATES OF AMERICA       .  CIVIL NO. 07-12056-PBS
                               .
                               .
          V.                   .  BOSTON, MASSACHUSETTS
                               .  JUNE 5, 2008
JEFFREY SHIELDS                .
          Defendant            .
          . . . . . . . . . . . . .
```

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the government:    U.S. ATTORNEY'S OFFICE
                       BY:  Mark Grady, Esquire
                       One Courthouse Way, Ste. 9200
                       Boston, MA  02210
                       617-748-3100
                       mark.grady@usdoj.gov

For the defendant:     FEDERAL DEFENDER OFFICE
                       BY:  Page Kelley, Esquire
                       408 Atlantic Avenue, 3rd Floor
                       Boston, MA  02210
                       617-223-8061
                       Page_kelley@fd.org

Court Reporter:

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**Wrentham, MA  02093**
**(508) 384-2003**

2

1                           **I N D E X**

2   Proceedings                                          3

3

1              **P R O C E E D I N G S**

2        CASE CALLED INTO SESSION

3              THE CLERK:  The Honorable Robert B. Collings

4   presiding, is now in session.  The case of United States v.

5   Jeffrey Shields; Civil Action No. 07-12056 will now be heard

6   before this Court.  Counsel, please identify themselves for the

7   record.

8              MR. GRADY:  Good morning, Your Honor, Mark Grady on

9   behalf of the United States.  With me is Jennifer Boal.

10             MS. KELLEY:  Good morning, Your Honor, Page Kelley.

11  I represent Mr. Shields.

12             THE COURT:  Okay thank you.  Good morning.  Okay, I

13  take it everyone agrees that the evidence that's admissible in

14  this proceeding before Judge Saris is governed by the Federal

15  Rules of Evidence; is that correct, Mr. Grady?

16             MR. GRADY:  Yes, it is, Your Honor.

17             THE COURT:  Ms. Kelley?

18             MS. KELLEY:  Yes, Your Honor.

19             THE COURT:  All right. Mr. Grady, why don't you tell

20  me how these are admissible under the Federal Rules of

21  Evidence, and then I'll hear Ms. Page Kelley as to why she

22  believes they're not.

23             MR. GRADY:  Certainly, Your Honor.  With respect to

24  this particular hearing, I just wanted to put out on the record

25  that it's the, these are, the subject of the hearing is whether

4

1   these are generally admissible.  There are at least two

2   limited purposes for which the exhibits could be admitted under

3   703 for the purpose of assessing the expert's opinions even if

4   the reports themselves are hearsay, and second on cross

5   examination with respect to 705.

6          THE COURT:  Right.

7          MR. GRADY:  And I would suggest here we probably

8   can't deal with either of those issues.

9          THE COURT:  Right.

10          MR. GRADY:  Okay.  With respect to the issue before

11   the Court, I think the first thing that needs to be mentioned

12   is that these are civil and not criminal proceedings.

13          THE COURT:  Now, I want you to tell me the rule that

14   you're relying on, please.

15          MR. GRADY:  Certainly, Your Honor, with respect to

16   the reports we are relying upon 8038, to introduce materials

17   with the police reports 8038(C).  With respect to warrants and

18   court records it would be 8036, 80--

19          THE COURT:  Is there any objection to warrants and

20   court records, Ms. Kelley?

21          MS. KELLEY:  Well, as far as court records, generally

22   we have made it very clear.  We are not objecting to certified

23   copies of convictions.  I think in some of these state court

24   proceedings what the best, sort of the best the government can

25   do is a docket sheet and an indictment.  We're not objecting to

5

1    those things.

2             THE COURT:  Okay.

3             MS. KELLEY:  We're not disputing that Mr. Shields has

4    these convictions.

5             THE COURT:  I'm just trying to figure out what's at

6    issue.  What court records are at issue?

7             MR. GRADY:  I'm happy to narrow that.  I think

8    probably with respect to the court records that the respondents

9    are objecting to Exhibit 1 and Exhibit 3.  There are two

10   warrants both from Florida that are unaccompanied by certified

11   dockets or certified convictions.

12            THE COURT:  Is there any reason why you can't get

13   them certified?

14            MR. GRADY:  I understand we attempted to get these

15   materials and were unable to do so, Your Honor.  That is my

16   understanding.

17            MS. KELLEY:  If I may, I'm not quite sure what he's--

18            THE COURT:  Well, why don't you show her what you're-

19   -

20            MS. KELLEY:  --referring to.

21            MR. GRADY:  Sure.

22            THE COURT:  --referring to.  We've got to be on the

23   same page--

24            MR. GRADY:  Yes.

25            MS. KELLEY:  Do you have the date on that?

1        THE COURT:  --before we can start talking about this

2   intelligently.

3        MR. GRADY:  Yeah, that would be 726 and 735.

4        MS. KELLEY:  Is this the obscene phone calls?

5        MR. GRADY:  The obscene phone calls and the nine-

6   year-old allegations of assault.

7        MS. KELLEY:  Well, if I could just say, for example,

8   with regard--

9        THE COURT:  Well, why don't you look at them and then

10  you can--

11       MS. KELLEY:  Well, I have.

12       THE COURT:  --you know what they are?  Okay.

13       MS. KELLEY:  Yes, sir.  I have them right here.

14       THE COURT:  Okay.

15       MS. KELLEY:  Like with regard to Bates No. 735 which

16  is a warrant from Port St. Joe, Florida, from 1989, this is a

17  warrant for a case that never resulted in any arrest or

18  conviction, and it contains allegations--

19       THE COURT:  Well why does that matter as far as its

20  admissibility concern?  I mean, I'm not dealing with relevance.

21  I'm dealing with whether the document is admissible under the

22  Federal Rules of Evidence, and why wouldn't that be admissible?

23       MS. KELLEY:  Well, I think it contains hearsay

24  concerning the underlying facts of the incident that is

25  inadmissible.  And I'm also just interested in why this is

7

1  relevant.  It does not refer to any incident that was the

2  subject of a conviction.

3           THE COURT:  Mr. Grady, do you want to respond?

4           MR. GRADY:  Sure, Your Honor.  With respect to

5  Exhibit 3 of what you're looking it.

6           THE COURT:  I should be looking at 3, sorry.

7           MR. GRADY:  That's what she's referring to when she

8  says the Port St. Joe warrant.  This particular warrant as

9  regards to this particular case relates to the attempted

10  assault, sexual assault, on a nine-year-old child in which the

11  respondent is alleged to have approached a nine-year-old

12  African American child and asked him to pull down his pants and

13  let me see your privates.  With respect to the issues presented

14  in this case, it is relevant because it deals with past sexual

15  conduct and deals with past sexual conduct regarding an

16  individual age nine which goes to the issue of whether Mr.

17  Shields suffers from pedophilia, one of the criteria for which

18  would be actions or sexual offenses against individuals under

19  the age of 13 or younger.  With respect to the admissibility of

20  the document, I would suggest that first the warrant is a

21  business record with the court and should be admitted as such.

22           THE COURT:  Yeah, if you can establish it.  How are

23  you going to establish that?

24           MR. GRADY:  That this particular warrant is a

25  business record of that court?

8

1          THE COURT:  If you can't get it certified, are you

2     going to have the clerk come up and testify?

3          MR. GRADY:  We would either have the clerk or perhaps

4     an officer from Port St. Joe to come up and testify as the

5     authenticity of the materials.

6          THE COURT:  Of the warrant?

7          MR. GRADY:  As to the police reports with respect to

8     the Port St. Joe warrants, it may be that we have to have a

9     clerk.

10          THE COURT:  All right.  Well, let me get this

11     straight.  All right.  I take it then the quite apart from

12     relevance because I'm going to leave that to Judge Saris.  As

13     far as the admissibility under the Federal Rules, I take it

14     with respect to the warrant if they get, either get a certified

15     copy or they get someone up here to testify that this, you

16     know, to make the necessary showing that this is, you know, a

17     regularly kept record of the court, it would be admissible at

18     least with respect to the Federal Rules; isn't that correct,

19     Ms. Kelley?

20          MS. KELLEY:  Well, I'm still objecting to this, Your

21     Honor, because--

22          THE COURT:  On grounds rather than relevance?

23          MS. KELLEY:  Yes, because first of all I don't know

24     if the government is seeking to admit this under 8038?

25          MR. GRADY:  The warrant would be 8036 as a business

9

1    record of the court--

2              MS. KELLEY:  Well--

3              MR. GRADY:  --and 803(22) as a record of the court.

4              MS. KELLEY:  I mean I would just say if this is, I

5    think that 803(6) requires that the person who compiles the

6    record have personal knowledge.

7              THE COURT:  No.

8              MS. KELLEY:  Well--

9              THE COURT:  No, the record, it requires that someone,

10   a custodian of record come, custodian of the records come

11   forward and testifies that this record is kept in the ordinary

12   course of business if it's the ordinary course of business to

13   keep such records.  I don't think you need the person who

14   actually wrote the record.

15             MS. KELLEY:  Well it says a memorandum, et cetera, in

16   any form or from information transmitted by a person with

17   knowledge if kept in the course of a regularly conducted

18   business.  And I would say with regard to this particular

19   record it contains information such as the age of a child and a

20   statement, alleged statement, of Mr. Shields.

21             THE COURT:  No, no I'm just talking about page 1, the

22   warrant.  I haven't gotten to the other stuff yet.

23             MS. KELLEY:  Okay.

24             THE COURT:  So my question is at least as to the

25   warrant it seems to me that, which just contains the

10

1   allegation, and a warrant that this would be admissible under

2   803(6) as long as they make the necessary showing.

3           MR. GRADY:  And/or 806(22) as a reference.

4           THE COURT:  Was he convicted?

5           MR. GRADY:  Uh--

6           MS. KELLEY:  He was never even--

7           THE COURT:  Wait a minute, wait a minute, wait a

8   minute.

9           MR. GRADY:  No, I take it back, Your Honor, with

10  respect to that warrant, no he was not convicted.

11          THE COURT:  All right, so 22 is not--

12          MS. KELLEY:  He was never even arrested.

13          THE COURT:  --wait a minute, wait a minute.  Twenty-

14  two is not going to work, right, Mr. Grady?

15          MR. GRADY:  That's correct--

16          THE COURT:  All right.

17          MR. GRADY:  --without a conviction, no.

18          THE COURT:  So it's 803(6) and quite apart from

19  relevance, my question is if they and I'm just talking about

20  page 1, if they bring forth a custodian who can make the

21  showings under 803(6) this would be admissible if relevant.  Do

22  you disagree?

23          MS. KELLEY:  Well, I think that this contains details

24  that would need to be redacted because even though they are

25  part of this record they are hearsay, and they are based on

1   facts that the government hasn't proven.

2          THE COURT:  It's an allegation.  The warrant contains

3   an allegation.

4          MS. KELLEY:  Well, one of the problems in this

5   proceeding is the government is seeking to put in,

6   "allegations" that have no factual basis that are not, they

7   can't back up.  And they're seeking to prove facts in the case

8   about what happened in this underlying incident through records

9   such as this that contain hearsay assertions that the defendant

10  cannot meet.

11         THE COURT:  All right, let me hear you.  You know, if

12  we go through each document and take this much time we'll be

13  here until Fourth of July.

14         MR. GRADY:  Well, I think--

15         THE COURT:  How about the second document is a

16  complaint.

17         MR. GRADY:  --under--

18         THE COURT:  And the third is--

19         MS. KELLEY:  What is the Bates number on that?

20         MR. GRADY:  That would be 736--

21         MS. KELLEY:  Okay.

22         MR. GRADY:  --and then 738--

23         MS. KELLEY:  Well this,--

24         MR. GRADY:  --and 739.

25         MS. KELLEY:  --Your Honor, if I could just talk about

12

1    Bates number 736.  Who wrote this?  Who's, it's completely

2    unsigned.  It contains allegations about something that Mr.

3    Shields allegedly did, how old this child is, what was said,

4    and we don't even know the author of this.

5          THE COURT:  Is this the entire document because

6    normally complaints, at least the complaints we have in federal

7    court, are at least signed or at least, is this, are you sure

8    that this is a complete document?

9          MR. GRADY:  Am I certain, no.  This is the complete

10   document that we have with respect to this that we were able to

11   obtain, and again we would need to authenticate it.  I would

12   concede to the at trial.

13         THE COURT:  Okay.

14         MS. KELLEY:  Your Honor, if I could just give you, I

15   know the Court is the schedule is backed up here, if I could

16   just give you a very brief background about these documents.

17   Why the government even needs to put these documents in is

18   beyond me.  Mr. Shields has interviewed with two experts

19   appointed by the court, and he has spoken about various

20   incidents, and we are not contesting that he was convicted of

21   certain offenses.  So why the government finds it necessary to

22   put in documents such as this one, Bates No. 736, that contain

23   rank hearsay.  We don't even know who authored the documents or

24   on what basis they wrote these things.  We have absolutely no

25   way to cross examine this document.  I, it's just unclear to me

1  why the government is even seeking to put this in.  I know the

2  Federal Rules pertaining to civil matters have, you know, lacks

3  the requirement than criminal cases, but as we say in our

4  motion in limine I think there's a long argument set out there

5  that I won't go into here.  This--

6        THE COURT:  Well, the motion in limine, I take it,

7  Judge Saris, if she's sending it down to me to determine

8  whether or not they're admissible or not I take it, you know,

9  she's going to exclude them on the grounds that you're talking

10  about, why is she sending this down--

11        MS. KELLEY:  Well--

12        THE COURT:  --for me to go through this exercise?

13        MS. KELLEY:  Here's what happened.  We moved to

14  exclude the police reports and other documents which the

15  government originally was seeking to put in about twice this

16  many documents, some of which contained very elongated, totem

17  pole hearsay.  We had a hearing before Judge Saris, and I

18  provided to the Court this morning with a transcript, and on

19  page 25 of that transcript--

20        THE COURT:  Is this the entire transcript?

21        MS. KELLEY:  Yes it is.  But I turn to page 25 for

22  Your Honor because that's where we discuss this particular

23  issue.  The court, I think pretty clearly said on the record

24  that totem pole hearsay is not admissible, but then she asked

25  the government to provide her with this specific document so

14

1   she could rule on them.  Well she's the fact finder.  So after

2   the hearing I walked away thinking wow, this is really a

3   problem.  She's going to be looking at what I think is

4   incredibly prejudicial and unreliable hearsay to try to

5   determine the admissibility.  And she's the one who has to rule

6   on his, the ultimate issue of whether Mr. Shields here gets

7   committed potentially for life.  So I filed something with the

8   Court asking her to please decide the issue without looking at

9   the specific documents.  We can just refer to them in our

10  pleadings, and I think that's why she referred it to you is so

11  that she doesn't become tainted by looking at stuff that is

12  clearly inadmissible.

13          THE COURT:  And what's the point of what you're

14  saying?

15          MS. KELLEY:  Well, I think you were asking why did

16  she send it down to me.

17          THE COURT:  Well, I understand that, but what do you,

18  I mean I don't think it's up to me to decide whether it's

19  relevant or not.  I think it's up to me to decide whether this

20  stuff, if relevant, is admissible under the Federal Rules of

21  Evidence.  Do you disagree with that?

22          MS. KELLEY:  Well, I wish you would also decide the

23  relevancy, but if you don't want to do that then--

24          THE COURT:  I'm going to have to talk to Judge Saris

25  because I don't know what my marching orders are.  I mean it

1   seems to me that when it comes to relevance that's something

2   that usually the trial judge decides.  I mean, I'm certainly

3   capable of going through these and deciding whether they are if

4   relevant are admissible.  In other words if they come within a

5   hearsay exception or something of that sort, but relevance, as

6   I say, is usually something that's decided by the trial judge.

7          MS. KELLEY:  Well, we have a trial date of June 16th

8   which yesterday I filed a motion to continue that date--

9          THE COURT:  Yeah, I saw that.

10         MS. KELLEY:  --because my co-counsel is not

11  available.  So it may be the time constraint is not as pressing

12  as Judge Saris thought it was when she sent this down.  But if

13  I could just give the Court, again, a brief overview.  You

14  know, in our motion in limine we set out the reasons why this

15  is not your typical civil case.

16         THE COURT:  See I don't have the motion in limine.

17  That wasn't referred to me.  All I have are the documents of

18  the government, and I have their memorandum.

19         MS. KELLEY:  Well we filed a lengthy motion setting

20  out why we think these things are not admissible.  So--

21         THE COURT:  Now was it, was your argument they're not

22  admissible because they're not relevant or is, or you, was it a

23  lengthy memorandum talking about they're not admissible even if

24  relevant?

25         MS. KELLEY:  They're not admissible under the rules.

16

1          THE COURT:  Because they're irrelevant or because

2  they don't come, they're hearsay and don't come within an

3  exception.

4          MS. KELLEY:  The latter.

5          THE COURT:  Okay.  So that's all laid out in your

6  motion in limine?  She didn't send that down so I haven't seen

7  that.  And I'll take a look at that.  Well, maybe the best

8  thing to do then is to for me to get that and also talk to

9  Judge Saris as to what she wants me to do because, as I say, I

10 think I'm perfectly able to determine whether these are

11 admissible under the Federal Rules of Evidence if relevant.

12 But the question as to whether she wants to consider them is

13 something that I don't think she wants me to decide, but I will

14 check with her.

15         MR. GRADY:  I don't wish to interrupt the Court, but

16 I think the Court has it right, that what Judge Saris wished

17 the Court to do.

18         THE COURT:  Well, she doesn't, she says I don't have

19 it right so that's the reason I have to--

20         MR. GRADY:  Right.

21         THE COURT:  --I have to talk to Judge Saris.

22         MR. GRADY:  That's, and if the Court wishes to do

23 that I understand, but I would suggest that commonsense

24 dictates the Court has it right.  The Court is not hearing the

25 trial testimony, hasn't heard the background, the Court isn't

1  familiar with the scientific evidence that's going to be

2  introduced here, the background of it.  Judge Saris did the

3  *Daubert* hearing that--

4          THE COURT:  I mean, I'm not even capable of ruling on

5  the, she's sort of making a cumulative argument too that this

6  was all forms of, part of the basis of the expert's opinion and

7  can be the subject of, you know, when he gives the basis, he or

8  she gives the basis for his or her opinions it will come in.  I

9  mean, I can't rule on the cumulative aspect of this stuff.

10          MR. GRADY:  And I agree.  Since the Court can't do it

11  what, as a result what must have been referred is simply the

12  hearsay issue.

13          THE COURT:  Okay.

14          MR. GRADY:  That's what I would suggest to the Court.

15          THE COURT:  All right.  Well why don't I do this?

16  I'm sorry that I haven't looked at your motion in limine, Ms.

17  Kelley, but Judge Saris made no reference to it in the order of

18  reference so I was unaware of it.  What I will do is, let me,

19  let me talk to Judge Saris and get a and take a look at your

20  motion in limine and try--

21          MR. GRADY:  Uh--

22          THE COURT:  --and narrow this down and then, and I

23  take it you have an opposition to the motion in limine on file

24  too?

25          MR. GRADY:  They were referenced in the government's

18

1  memorandum.  It would be, I think, Dockets 116, 120--

2          THE COURT:  All right let me, hold on just a second.

3          MR. GRADY:  --and one's Dockets 116 and 121.  And

4  before we move off of this, Your Honor,--

5          THE COURT:  Motion in limine to exclude hearsay

6  evidence 116.  That's the motion in limine?

7          MR. GRADY:  Yes it is, Your Honor.

8          THE COURT:  Is there a memorandum in support of that

9  somewhere?

10          MR. GRADY:  The, I believe that is the--

11          THE COURT:  Or is it included in the motion?

12          MR. GRADY:  --respondent's motion and incorporates

13  the memorandum.

14          THE COURT:  Okay, now your Opposition to that is what

15  document?

16          MR. GRADY:  121.

17          THE COURT:  Now is that, is that the universal

18  documents other than the documents themselves and your memo

19  that I need to consider?

20          MR. GRADY:  From the government's perspective, yes.

21          THE COURT:  And, Ms. Kelley?  Is there anything else

22  on the docket that I need to look at other than your motion to

23  exclude and the government's opposition, the package of

24  documents and also the government's latest memorandum?

25          MS. KELLEY:  Well, we also filed - well, I guess you

1  don't need to read our response to their status report that

2  asks that Judge Saris not look at the report so I think that's

3  fine.

4           THE COURT:  Yeah, I did see that.

5           MS. KELLEY:  Okay.

6           MR. GRADY:  Your Honor, I do have to say if the Court

7  is expanding the hearing to include relevance for these

8  generalized objections under criminal protections that are

9  listed in the memorandum it may be that the documents have to

10 be greater.  The government briefed the hearsay issue; the

11 motion addressed hearsay issues.,

12          THE COURT:  Well let me, what I think the best thing

13 for me to do is to talk to Judge Saris, take a look at the

14 motion and the opposition, and then I'll issue some sort of

15 order indicating the parameters of the decision that I need to

16 make, and if I feel I need further briefing or any other

17 further hearing I will have it.  It seems to me I've got to get

18 that set before I do anything.  So is that way of proceeding

19 okay with you, Mr. Grady?

20          MR. GRADY:  Your Honor, I would say there are two

21 things I'd address on that.  First, there may very well be the

22 same time pressure.  Judge Saris has denied the motion to

23 continue the trial, although there is one now pending.  Second,

24 we, I would suggest to the Court we are all here.  We're all

25 ready to address the hearsay issues.  Perhaps we could get that

20

1   part out of the way, and if that's all we're going to do if

2   the Court could then rule.

3          THE COURT:  All right.  Well, I think I should, well

4   let me hear it with respect, without going through each

5   individual document, tell me why in general you say these

6   police reports are admissible under 803(8), and Ms. Kelley can

7   tell me why not.  At least I'll get the--

8          MR. GRADY:  The gist.

9          THE COURT:  --argument, the global argument I will

10  affirm, and then we can have a further hearing on specific

11  documents if we need to have.

12         MR. GRADY:  If that's the case, Your Honor, and if

13  the Court's schedule is pressed, the government's memorandum

14  very thoroughly puts out the issue, but to briefly recap that,

15  I think two observations are necessary up front.  As I said the

16  first is that Judge Saris has found these proceedings to be

17  civil rather than criminal, and she found that in a prior

18  decision in this case *United States v. Shields*, 522 F.Supp. 2d

19  317, specifically on pages 337 and 338.  Quoting Judge Saris,

20  "I conclude that Judge", excuse me, "I conclude that Section

21  4248 establishes a scheme of civil not criminal commitment for

22  sexually dangerous persons.  Challenge is based on the ex post

23  facto, grand jury, self-incrimination, Sixth Amendment and

24  cruel and unusual punishment claims are only cognizable there."

25  And that's relevant because the relevant rule with respect to

21

1  police reports--

2  　　　THE COURT:  Right.

3  　　　MR. GRADY:  --distinguishes between criminal and

4  civil proceedings.  Second, the reports are presumptively

5  admissible, and that's from both the Supreme Court's decision,

6  *Beech Aircraft*, 488 U.S. on specifically on page 170, excuse me

7  167.  The Supreme Court there quoting "At first the rule

8  assumes admissibility in the first instance.  Second, it

9  provides ample provision for escape if sufficient negative

10  factors are present."  There was a similar holding of the First

11  Circuit in *Lavanski (ph) v. Coleco Industries* which is at 929

12  F2d. 42, specific page site 45.  The reports are due an initial

13  presumption of admissibility.  Second, with respect to the

14  objections raised by respondent, I'm sorry third, I apologize.

15  I went to three and I said there were two points initially.

16  The fact that the reports are based upon information obtained

17  from sources outside of the government is irrelevant to the

18  issue of admissibility.  And to quote the District Court of

19  Massachusetts, the First Circuit has flatly rejected the

20  argument that official first-hand knowledge be required in the

21  compilation of such a report.  And that was in *U.S. v. Little,*

22  59 F.Supp. 2d page 184 and Footnote 3.  But the First Circuit

23  similarly said, "A great advantage of Clause C of Rule 803(8),"

24  the provision at issue, "is that it embraces records based on

25  statements or testimony by outsiders to the government so there

1  is no need to show the source was an official with personal

2  knowledge."  With respect to the reports, and speaking of them

3  generally, the police report introduced by the government, what

4  the government has proposed to introduce are the reports--

5          THE COURT:  Wait a minute are you seeking to admit

6  these under 8(B) or 8(C)?  Because 8(C) is factual findings--

7          MR. GRADY:  Correct.

8          THE COURT:  --and police reports--

9          MR. GRADY:  It would be all of them.  It would, some

10 would be, you know, where it is a matter observed by the police

11 officer.  It would be (B) where the report addresses factual

12 findings and conclusions.  And if I were to point the Court to

13 an example of such a report as to conclusions, if you would

14 look at Exhibit 4, page 683, and I don't mean to go into exact

15 details.  The Court said to skip over.

16         THE COURT:  Now that's an example, as you say, of

17 factual finding?

18         MR. GRADY:  It would be (C).  In the top paragraph on

19 that page it starts--

20         MS. KELLEY:  What's the Bates number on that one?

21         MR. GRADY:  --683.  And it starts with investigation

22 revealed that on July 15, 1989, and then it recounts the

23 conclusions of the investigation.  That would be something

24 introduced under (C).  If one were to go to the page before it,

25 which is 681 in Exhibit 4, that would be a police report

1   detailing the arrest of Mr. Shields.  That would be

2   admissible--

3           THE COURT:  What about police reports that merely,

4   you know, witness one said this and witness two said that,

5   witness three said that, but if there are no factual findings

6   and they're not observations by the police officers?

7           MR. GRADY:  I think that that would not be

8   admissible.

9           THE COURT:  Not be admissible.

10          MR. GRADY:  That if, if what is simply recounted as a

11  witness said acts it would not be.  There are aspects of that I

12  would suggest that are in this folder.  If there were police

13  reports--

14          THE COURT:  I'm sorry, there are aspects of what?

15          MR. GRADY:  --that would be admissible, and I would

16  tell to the Court that, for instance, there's one instance

17  where a young victim comes to the police report, police

18  station, for the purpose of reporting a sexual assault.  That

19  particular statement while we're counting the purpose or state

20  of mind of that individual, that statement is admissible under

21  the state of mind exception, the hearsay rule.  That is it

22  states a present intent of an individual and that is recorded

23  that would be separately admissible.

24          THE COURT:  Now what are you talking about 803(3)?

25          MR. GRADY:  Off the top of my head without looking at

24

1  my memorandum I'll have to, yes,--

2        THE COURT:  It says--

3        MR. GRADY:  --803(3), Your Honor.  And I can try to

4  find exactly what I'm referring to in these materials.

5        THE COURT:  If it's in your memorandum you don't need

6  to do that.

7        MR. GRADY:  It is.

8        THE COURT:  All right.

9        MR. GRADY:  But yes and so it would be almost all of

10  803; it would be both (B) and (C); (A), (B) and (C), the

11  activities of the officer agency that is activities of police

12  officers, their direct observations and their findings and

13  conclusions.  I would suggest that the portions we have

14  identified in the letter and the memorandum fall within that

15  provision, Your Honor,--

16        THE COURT:  Okay.

17        MR. GRADY:  --subject to authentication as the Court

18  noted.

19        THE COURT:  All right, Ms. Kelley, I'll hear you on

20  that.

21        MS. KELLEY:  Well--

22        THE COURT:  Broad principle, quite apart from

23  cumulative, quite apart from relevance, okay?

24        MS. KELLEY:  Okay.  With regard to this being a civil

25  and not a criminal proceeding, Judge Saris herself in the order

1 that Mr. Grady just quoted found that before the government

2 can put in prior instances of child molestation that those have

3 to be proven beyond a reasonable doubt which just--

4          THE COURT:  Well, that's burden of proof.

5          MS. KELLEY:  Yes.

6          THE COURT:  That's not admissibility of evidence.

7          MS. KELLEY:  But what I'm saying is if you're looking

8 at whether this is a civil or a criminal case, this is not

9 strictly speaking a civil case.  And one of the--

10          THE COURT:  So are you saying that these are not,

11 that 8(C) is not admissible at all because this is somehow a

12 quasi criminal matter?

13          MS. KELLEY:  That's correct.  That's one of the

14 arguments that is set out in the defendant's motion in limine

15 is that this is so much like a criminal matter that that

16 exclusion in 803 ought to apply to this proceeding as well as

17 if it were a criminal matter.  And the kind of touchstone for

18 that argument is that the statute itself here gives Mr. Shields

19 a confrontation right which you typically don't have in a civil

20 proceeding.  He has a statutory right to confront the witnesses

21 against him.  Not only that he has a due process right under

22 the Constitution, and that encompasses the right to confront

23 witnesses against him.  And in our memorandum in Part 2 we go

24 through the very long and well-established case law.  And I

25 think with a lot of precedent backing us up that these civil

26

1   commitment cases are not like the case Your Honor saw in the

2   *Shorts* case where you wrote a decision in 1993 where a postal

3   truck collided with an automobile, and you found there that

4   police reports could come in.  In this kind of proceeding a

5   person has a very strong liberty interest unlike a case where

6   two vehicles are colliding and you're making some decision

7   about that.

8          THE COURT:  Well what then, if that's the case what

9   was the import of Judge Saris deciding this was a civil matter?

10         MS. KELLEY:  Well, we were filing a motion to dismiss

11  under, it was a very fat motion to dismiss, in a lot of, with a

12  lot of different arguments.  And she was rejecting those, for

13  example, on ex post facto grounds, and I think her statement

14  that this was civil, not criminal was to back up her decision

15  on those issues.  But as far as the Rules of Evidence, I think

16  Mr. Shields' confrontation rights both constitutional and--

17         THE COURT:  Yeah, okay,--

18         MS. KELLEY:  --statutory--

19         THE COURT:  I'm going to hold you off, Ms. Kelley.

20  You very well may have a good argument, but I don't think

21  that's what she referred the case to me for.  So I think why

22  don't you argue as if it's established, just hypothetically

23  established, that for purposes of the Federal Rules of Evidence

24  this is a civil matter, and I will certainly indicate in

25  whatever order I enter that you dispute that and that I have

1  not made a decision on that, okay?

2          MS. KELLEY:  Okay, well with regard, we also address

3  this that in the motion in limine.  If you look at 803(8).

4  First of all, many of the documents which the government seeks

5  to admit do not, are not founded on the personal observation of

6  the author of the document.  So they would not be admissible

7  under Part (B).  In Part (C) which refers to invest, the

8  reports of investigations being--

9          THE COURT:  Factual findings resulted from an

10  investigation.

11          MS. KELLEY:  Yes.  This, the type of "investigation"

12  that this rule refers to is not encompassed by this report that

13  the government just cited to you which is at Bates 683 where an

14  officer says investigation revealed and then goes through some

15  hearsay that he is reporting in his report.  If you look at the

16  cases that the government cites in support of their assertion

17  that factual, that results of factual investigations are

18  admissible, such as *Coombs v. Wilkinson*, in that case the Court

19  held that in a 1983 action they were going to admit a report

20  prepared by a committee that was appointed to investigate some

21  happenings inside a correctional institution.  The

22  investigation took four months.  They conducted 123 interviews

23  and et cetera, and the Court admitted the results of that

24  investigation.  And I won't go through every case they cite,

25  but those, the cases have to do with commissions and

1  investigations that are done in a very--

2          THE COURT:  Do you have cases that say the law, say a

3  police officer does an investigation - police officers are

4  always doing an investigation.  They do an investigation.  They

5  lay out the evidence, and then at the end therefore I conclude

6  one, two, three, four.  Are you saying that that is not

7  admissible in a civil action under 8(C)?

8          MS. KELLEY:  Well, I think it would depend on the

9  circumstances.  In the Shorts case where you--

10         THE COURT:  So in other words, just because it's

11  police officers that are doing the investigation doesn't in

12  your view by in and of itself render it inadmissible under

13  civil action 8(C)?

14         MS. KELLEY:  It doesn't in and of itself render it--

15         THE COURT:  Okay.

16         MS. KELLEY:  --inadmissible.

17         THE COURT:  All right, I just want to get where you

18  are.

19         MS. KELLEY:  But neither does it render it admissible

20  that a policeman simply says in a report or begins a report

21  investigation revealed, et cetera.  And if you look at your own

22  decision in the Shorts case it's very interesting there that

23  you actually say the officer isn't just paraphrasing things

24  that other people said to him.  The officer was available to

25  testify in that case which none of these people are available.

1   There's no contention the report is untimely or that the

2   officer lacked experience or et cetera.  So I think you can

3   distinguish cases in which those reports would be admissible

4   from this case.

5           Finally, there are two other problems under 803 with

6   this these reports coming in.  I mentioned a lot of the

7   information is not personally observed and, also, you have to

8   have some indication of trustworthiness.  And we have cited on

9   page 6 of our--

10          THE COURT:  No, no, it says unless the sources of

11  information or other circumstances indicate lack of

12  trustworthiness.

13          MS. KELLEY:  All right.  Well, on page 6 of our

14  Motion in Limine we have collected cases finding that in

15  situations where you're just interviewing witnesses in a

16  criminal case you may not infer trustworthiness.

17          THE COURT:  Well, you know, you really, you folks are

18  not meeting because the government just told me that if all the

19  police report says is I went out and interviewed witness X and

20  witness X said this they're not seeking to admit it.  So I mean

21  that argument you're just making is an argument against

22  something that the government is not attempting to admit.

23          MS. KELLEY:  Well, if you look at page 683 of the

24  Bates that's precisely what they're doing.

25          THE COURT:  All right let me see, 683?  That's under

30

1   what tab under your--

2          MR. GRADY:  Apparently the Federal Defenders didn't

3   receive the package.  I mailed it the same day I sent it to

4   you.

5          THE COURT:  All right, I just need to know where it

6   is and what tab this is.

7          MR. GRADY:  Okay page 683, I believe, is Tab, let me

8   just try, I apologize, Your Honor, she's looking at them--

9          THE COURT:  That's all right, take your time.

10          MR. GRADY:  --under a different, 683 would be Tab 4.

11          THE COURT:  Tab 4, okay.

12          MR. GRADY:  And the third page thereof.

13          THE COURT:  Okay, well as long as I know which tab it

14   is I can find it.  All right, yeah.

15          MS. KELLEY:  I mean just to examine this one report,

16   investigation reveals and then the officer proceeds to recount

17   the specific facts of this incident not even attributing them

18   to anyone.  We don't even--

19          THE COURT:  So you're saying that this is not the

20   type of factual findings that the cases indicate come within

21   Rule 8(C)?

22          MS. KELLEY:  That's correct.

23          THE COURT:  Okay fair enough.

24          MS. KELLEY:  Okay.

25          THE COURT:  I understand the argument.

31

1          MS. KELLEY:  All right, and that's it, Your Honor.

2          THE COURT:  Okay.  All right let me - thank you very

3   much, because that is helpful.  I will talk to Judge Saris.  I

4   will determine after talking to her what the parameters are of

5   what I'm supposed to decide, then I will go through the motion

6   in limine and the opposition and then, first of all, I will let

7   you know in a court order what the parameters are so you know

8   that ahead of time.  And if I need further briefing or further

9   hearing we will have one.  Sorry that there's been all this

10  confusion, but I think we do need to get those things straight

11  before I can do very much more.  So that concludes the

12  proceedings in the case.

13          Thank you very much, and we'll move on to the new

14  arrest.

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

32

CERTIFICATION

1

2      I, Maryann V. Young, court approved transcriber, certify

3  that the foregoing is a correct transcript from the official

4  digital sound recording of the proceedings in the

5  above-entitled matter.

6

7  /s/ Maryann V. Young                    May 15, 2009

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25