```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,      )
                               )
                Petitioner     )
                               )
            -VS-               ) CA No. 07-12056-PBS
                               ) Pages 1 - 23
JEFFREY SHIELDS,               )
                               )
                Respondent     )



                    PRETRIAL CONFERENCE

            BEFORE THE HONORABLE PATTI B. SARIS
                 UNITED STATES DISTRICT JUDGE




                         United States District Court
                         1 Courthouse Way, Courtroom 19
                         Boston, Massachusetts 02210
                         June 11, 2008, 2:55 p.m.




                    LEE A. MARZILLI
                 OFFICIAL COURT REPORTER
               United States District Court
               1 Courthouse Way, Room 3205
                   Boston, MA  02210
                     (617)345-6787
```

1    A P P E A R A N C E S:

2        MARK J. GRADY, ESQ. and JENNIFER A. SERAFYN, ESQ.,
     Assistant United States Attorneys, Office of the United
3    States Attorney, 1 Courthouse Way, Boston, Massachusetts,
     02210, for the Petitioner.

4

5        PAGE KELLEY, ESQ, Federal Defenders,
     408 Atlantic Avenue, Boston, Massachusetts, 02210,
     for the Respondent.

6

7        ERIC TENNEN, ESQ., Swomley & Associates,
     227 Lewis Wharf, Boston, Massachusetts, 02110-3927,
     for the Respondent.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                P R O C E E D I N G S

2          THE CLERK:  The case of the United States V.

3    Jeffrey Shields, Civil Action 07-12056, will now be heard

4    before this Court.  Will counsel please identify themselves

5    for the record.

6          MS. KELLEY:  Page Kelley.  I represent

7    Mr. Shields.

8          MR. GRADY:  Your Honor, Mark Grady on behalf of

9    the United States.

10          THE COURT:  So as you both have seen, I've bumped

11    the trial from next week because of Mr. Swomley's schedule,

12    and I'm also going to try and impanel on the 23rd and then

13    start on the next day.  Did you see that?

14          MS. KELLEY:  I saw that, your Honor.  I know it's

15    a tough sell at this point, but I would just like to make a

16    record about my objections to the Court doing that and try

17    to persuade you to --

18          THE COURT:  You know, I actually just went through

19    this with Mr. Fick.  I went back and looked at the docket.

20    I appointed both of you.  You're equal to him in every sense

21    of the word.  It's the rarest of rare criminal case where I

22    even appoint two people, and I think -- I mean, I don't mean

23    just to say this -- you're a highly qualified attorney.  I

24    mean, you've appeared in front of me in criminal cases.  At

25    this point I'm not going to knock it into the fall.  It's

1   just not going to happen.

2          MS. KELLEY:  Well, please, if you'd just let me

3   make a record on this.  Mr. Swomley was added to all of the

4   SDP cases in the building, save one.  That's a case in front

5   of Judge Wolf where we're going to have a person on staff as

6   an assistant federal public defender when he tries that who

7   is coming from the state SDP unit.  This is not a criminal

8   case.  This is not a run-of-the-mill criminal case.

9   Mr. Swomley was brought on at the very outset, and

10  Mr. Shields considers Mr. Swomley his attorney, and I really

11  think -- your Honor has not been talking to Mr. Shields,

12  obviously, this past week.  Mr. Shields is adamant that he

13  wishes Mr. Swomley to try his case.  And in all of our

14  visits, in all of our preparation, everything, Mr. Swomley

15  has been the attorney who is going to handle the expert

16  testimony, which is the most important aspect of this.

17         THE COURT:  If Mr. Swomley were otherwise

18  available, that's fine, but to tell me the only date that's

19  available is next October is not an acceptable solution to

20  me.

21         MS. KELLEY:  Well, he is available, it's my

22  understanding, the whole month of July.  He is out in

23  August.

24         THE COURT:  Well, no one gave me alternative

25  dates.  The only alternative date you gave me was October.

1      MS. KELLEY:  Well, I believe it was September 15

2  in the motion that we filed, but I think --

3      THE COURT:  No, I think it was October was the

4  last one I saw.  If it's another week, I don't care, but the

5  big issue --

6      MS. KELLEY:  That's fine.

7      THE COURT:  But the big issue is, you've got to

8  get every expert in the room, or you have to waive the

9  presence of the experts.

10      MR. TENNEN:  That was the problem, your Honor.

11      THE COURT:  Yes, it was October by the time I saw

12  it again.  This case has been bumped and bumped and bumped,

13  and I understand I am trying to deal with Mr. Swomley's

14  impossible schedule.  I --

15      MS. KELLEY:  Well, if I may, your Honor --

16      THE COURT:  No, no, at this point you said he

17  would be done the 23rd.  You're a lawyer.  I'm willing to

18  order an expedited transcript.  We've already had a cross of

19  Mr. Tomich.  Your client doesn't have the right to say, "I

20  want this one and not this one."  You're both appointed as

21  co-lead.  You're an excellent lawyer.  I'm willing to work

22  around his schedule.  He said he'd be done on a Monday, and

23  so I don't know what else to do.  I mean, I have my own

24  schedule to deal with.  So I've got this huge block of time.

25  You've made the record.  I'm overruling it.  I'm willing to

0c60acac-b9d5-4ff4-bc6d-2e1240cd12ee

1    adjust.  I'll impanel around him.  I'll give him an

2    expedited transcript.  We've already had a cross of

3    Mr. Tomich that you can basically just track.  But you're

4    co-lead, this is a CJA appointment, and he doesn't have the

5    right to say, "I want X versus Y."  If you can come up with

6    a date in July when all the experts can be in a room, I am

7    happy to do that, but I'm not willing to go to October.

8    I've bumped this now twice, so --

9               MS. KELLEY:  Well, we are available and our

10   witnesses are available the week of July 7.  You know, one

11   of the things we're going to --

12              THE COURT:  I am out of town at a Budget Committee

13   meeting until the 15th.  I'm willing to give you the 15th if

14   they're available.  See, we go through this, but as far as

15   I'm concerned, I know that it's very difficult working with

16   someone else's schedule, but --

17              MS. KELLEY:  We are also available the week of

18   July 14.

19              THE COURT:  Are all your witnesses -- you told me

20   October.  Somebody told me October in the last motion.

21              MS. KELLEY:  I believe in our written motion it

22   was September 15.  I don't know where your Honor is getting

23   the October date.

24              THE COURT:  It was something to do with experts.

25              MR. TENNEN:  And that was the problem, your Honor,

1  was --

2          THE COURT:  Are your experts available the week of

3  July 15?

4          MR. GRADY:  I know that Dr. Tomich starts a trial

5  on the 22nd.  We don't have him listed as available that

6  week on our calendar as I sit here right now, and I expect

7  that, you know, had it been reported that he were available

8  that week, we would have --

9          THE COURT:  Every expert was available the week of

10  the 23rd, if I remember correctly.

11         MR. GRADY:  We're going to have to work on that

12  because our expert when you denied the first motion cleared

13  out the week of the 16th, and then now --

14         THE COURT:  Well, but Mr. Swomley can't make it at

15  all the week of the 16th.

16         MR. GRADY:  Yes.  No, no, no, and, your Honor, and

17  I don't say it to complain, and I don't say it because I

18  don't understand the Court's frustration or the desire to

19  get this case started -- I wish to get it started as well --

20  but what I'm saying is that the week of the 23rd I have

21  asked him to see what he can do.  He had previously had

22  something to do --

23         THE COURT:  Well, why don't you both get waivers

24  from your sides and get -- either that, or what I could do

25  is go without a jury.  It's not my preference, truthfully.

1    I'd prefer a jury.  I think it's more legitimate from both

2    people's point of view.  And we could just do a few days

3    here, a few days there, and build it into my schedule.

4              MS. KELLEY:  Well, your Honor, I have spoken with

5    Mr. Shields in person once when he was in the courthouse

6    last week and almost every day since on the phone.  We have

7    agonized over whether to withdraw our request for a jury

8    because he is so intent on having Mr. Swomley present at his

9    trial.  And I'll just say, I appreciate your kind words

10   about my expertise.  Learning two or three days ago that I'm

11   going to be responsible for absorbing all the information I

12   need to to handle the experts in this case --

13             THE COURT:  He'll be here.  I scheduled around

14   his -- you told me it would be done on the 23rd.

15             MS. KELLEY:  Well, your Honor, it's not our fault

16   his murder case has gone on longer than we thought.

17             THE COURT:  Excuse me.  You told me it was going

18   to be done on the 23rd.

19             MS. KELLEY:  We attached a trial schedule that

20   showed that he's having his closing argument the day we're

21   impaneling.  In my experience in murder cases in Suffolk,

22   one is not allowed to leave a deliberating jury.  If he has

23   questions or a verdict and we have to suspend here or

24   whatever, I've been ordered to stay in the building over

25   there in the past.  And the whole idea, your Honor, I mean,

1    I really mean this respectfully, but the whole idea that a

2    defense lawyer is going to show up with no preparation

3    whatsoever and conduct a trial of this magnitude is really

4    not --

5                THE COURT:  We've got co-lead counsel.  I'm not

6    willing to -- this case has been bumped twice.  It's old.

7    The briefing took forever.  I understand some of it was the

8    experts' issues.  It's now going on two years, isn't it?

9                MS. KELLEY:  Well, I understand your Honor's

10   exasperation, but, frankly, Mr. Shields is the one sitting

11   behind bars, and Mr. Shields wishes Mr. Swomley to be here.

12               THE COURT:  His wishes are not controlling.

13   They're a factor but not controlling.  I need a real date, a

14   real date where I'm not tethered to Mr. Swomley's schedule,

15   which keeps changing by a lot, by huge amounts.  I've kept

16   accommodating his schedule.

17               MR. TENNEN:  Your Honor, the big change came

18   because the murder trial was, for whatever reason, horribly

19   delayed and gone many more weeks than we could have

20   anticipated.  In terms of counsel's scheduling --

21               THE COURT:  Well, then get me another date.

22   What's wrong with the week of July 15?

23               MR. TENNEN:  I think the problem wasn't on

24   counsel's side.  It was the experts.  Mr. Swomley is

25   available the last three weeks of July, September, October.

1  We couldn't get everybody, including experts, available in

2  that time.  That was the problem.

3          THE COURT:  So have you come in here with -- what

4  are your experts' availability the week of the 15th?

5          MR. TENNEN:  If I recollect correctly, and I could

6  be mistaken, I thought Dr. Tomich was not available in July,

7  and so that's why we then moved on from there.

8          THE COURT:  Well, Swomley is not available all of

9  August.  I mean, it puts me in a terrible position.

10          MS. KELLEY:  Well, your Honor, may I ask, since

11  you were talking about this date for Mr. Peavy, for the week

12  of September 1?

13          (Discussion off the record between attorneys.)

14          THE COURT:  What are your schedules for your

15  experts?  In other words, I've blocked off these last two or

16  three weeks just for this case.  This is all I have on.

17          MS. KELLEY:  I mean, our witnesses are all

18  available and the attorneys the week of September 1.  I

19  don't know what the government's experts are doing that

20  week.

21          THE COURT:  Do you know?

22          MR. GRADY:  September 1, your Honor?

23          THE COURT:  Well, what's going on with your people

24  the week of July 15?

25          MR. GRADY:  July 15 we don't have Tomich listed.

1    I don't know the exact reason.  I know he starts a trial on

2    the 22nd of --

3              THE COURT:  Well, what if we put the other one on

4    first?  Who's the other person?

5              MR. GRADY:  Plaud was the fourth designee.

6              THE COURT:  Yes, why don't we put that person on

7    first?

8              MR. GRADY:  I, again, don't have Dr. Plaud being

9    listed as available that week either.

10             THE COURT:  Well, what about the 22nd?

11             MR. GRADY:  That's the week Dr. Tomich starts a

12   trial.

13             MS. KELLEY:  Your Honor, I know your Honor is -- I

14   respect your Honor's wish to move this forward, but I wonder

15   if we could just do the date of September 1.

16             MR. GRADY:  Your Honor, I start a three-week, if

17   not longer, trial September 8.

18             THE COURT:  This is what's become so impossible.

19   This is why we came up with the date of the 16th, because

20   everyone was available.

21             MR. TENNEN:  Your Honor, may I suggest, at least

22   in state court, experts routinely have multiple cases on for

23   same weeks, and the attorneys work out the scheduling for

24   that.  And so if Dr. Tomich has a case starting that week

25   here in the state of Massachusetts, we can work out a

1   schedule to make sure he can hit both, he's available for

2   whatever dates.  I mean, that happens often because there's

3   not a large commodity of them.

4           THE COURT:  If we can get another date in a

5   reasonable time period, and that's why I think we ended up

6   in October.  I mean, there was an October date in there, and

7   I went "No way."  So there's got to be a way that we can

8   work this out, even if it means there's a day that we're

9   down for jury time in July.  I'm willing to go to July, but

10  I'm not willing to go to October.

11          MS. KELLEY:  And your Honor is out the week of

12  July 7?

13          THE COURT:  Yes.  I'm in Washington the week of

14  the 8th or something.  So I could do it the week of the

15  15th, the 22nd, the 29th, the 4th.  I've blocked these next

16  two weeks, which I'm now down for because you can't

17  reschedule trials that quickly.  It's creating havoc all

18  around.  And we scheduled around Mr. Swomley.  I mean, that

19  was the whole thing.  We booked this around his schedule.

20          MR. TENNEN:  Murder trials are unpredictable, your

21  Honor.

22          THE COURT:  Well, what happened?  I mean, it's so

23  off by weeks and weeks and weeks?

24          MR. TENNEN:  There was late discovery.  They

25  didn't start on time.  It took five days to get a jury.  It

1    took a whole day just to do a view.

2              THE COURT:  Who is it?  Steve Neel is the judge?

3              MR. TENNEN:  Yes, your Honor.

4              THE COURT:  I may give him a call.

5              MR. TENNEN:  It's legitimate.  I assure your

6    Honor, you know, they've been taking evidence for -- I think

7    they're on their third week of taking evidence.  We're

8    talking probably thirty to forty witnesses for both sides

9    when it's all said and done.

10             THE COURT:  I'm just saying, he's just so off.  We

11   would have scheduled this way weeks ago if we had known.

12             MR. TENNEN:  If it had actually started the day it

13   was supposed to start, we probably would have been on

14   schedule.  And we put in a cushion for that.  They went in

15   May 5, I believe it was.  They didn't actually start taking

16   evidence till two weeks later because of the way discovery

17   went.

18             MS. KELLEY:  Can I just say something?  Never mind

19   his trial.  If we were to go the week of the 14th and the

20   government has a problem with Dr. Tomich not being

21   available, perhaps what I can do -- and obviously

22   Mr. Shields would have to do this -- but I think Mr. Shields

23   would be willing to waive his confrontation rights on

24   Dr. Tomich to get him on video.

25             MR. GRADY:  As to the 14th of July, I know that

1   Attorney Boal is not available that week, and she and I are

2   government counsel on this.

3            THE COURT:  Is that her vacation week?

4            MR. GRADY:  I believe so.  We didn't have enough

5   space to put all the reasons for all of the people, your

6   Honor.

7            THE COURT:  What's the following week?

8            MR. GRADY:  The 21st she is not available.  The

9   first week Attorney Boal is available is the week of the

10  28th.

11           THE COURT:  What about the week of the 28th?

12           MR. GRADY:  He might not be available that week,

13  but he is available at the end of the next, so that if we

14  needed to do it, that Friday of the following week we could

15  take Tomich.

16           THE COURT:  Well, if they're willing to waive

17  confrontation, you'll videotape him.

18           MS. KELLEY:  Could I suggest the week of August 4?

19           THE COURT:  We'll videotape him.

20           MR. GRADY:  Yes, if we started the 28th and --

21           THE COURT:  He's not as essential, in my view, as

22  Plaud.  So, I mean, this is civil.  If he waives his

23  confrontation rights -- and I'll make that contingent -- we

24  could do Tomich.  What week did you say she's back?

25           MR. GRADY:  Jennifer is here the 28th.  We could

1   go the 28th into the first week of August.

2          MS. KELLEY:  I'm sorry, I cannot go that week.  I

3   have tickets out of the country.  That's the one week in the

4   summer I'm not available, but I am back on August 3.

5          MR. GRADY:  And I will do it if we start the 4th,

6   your Honor, even if I have to skip -- I would have been out,

7   but I will do it that week.

8          THE COURT:  If it's one week, we can do it.  If

9   not, I am out the following week.  That is the issue.

10         MS. KELLEY:  And the other problem is, I think --

11         THE COURT:  You know, we can go off the record

12   here, Lee.

13         (Discussion off the record.)

14         MS. KELLEY:  I guess we should go on the record,

15   if that's all right.  At the hearing before Judge Collings,

16   Mr. Grady mentioned that regardless of Judge Collings'

17   ruling, the government will use the reports that it's been

18   trying to get admitted under Rule 703, which says that

19   experts are allowed to testify to inadmissible evidence if

20   they used it as part of their evaluation, but only after the

21   court has gone through an analysis to see whether the

22   inadmissible evidence is more prejudicial than probative.

23   And I'd just hate to see a situation where we have this very

24   careful examination of that evidence by Judge Collings, and

25   he rules some of it admissible and some of it inadmissible,

1   and then it counts for nothing because the government is

2   just waving it around and using it at trial anyway.

3           THE COURT:  Well, let me back up for a minute.  I

4   could have done this myself.  I mean, every day of the week

5   I have motions to suppress, so I just did this as a matter

6   of -- because I was very busy, I had my kid's graduation,

7   and the fact remains, I thought it would make you feel more

8   comfortable.  I will make rulings if there are issues on

9   relevance or 403.  There's no way someone who's not the

10  trial judge can do that.  I solely entrusted to him the

11  issues of the hearsay.

12          Now, that having been said, if something is totem

13  pole hearsay, the expert shouldn't be relying on it.  It's

14  not reliable if it's multiple iterations into it.  And I'm

15  surely not going to let him testify in front of the jury

16  about something that we've ruled excluded.

17          MR. GRADY:  Yes, and I think that I'm being

18  painted with a rather broad and unfair brush there, your

19  Honor.

20          THE COURT:  So, I mean, if it's the police officer

21  who talked to the mother who talked to the victim, maybe.

22  If it's a police officer who talked to the sister who talked

23  to the this, who talked to the that, I mean, you would have

24  to make sure that the expert was relying on something that

25  was intrinsically reliable and trustworthy.  So, in other

1    words, something may not be admissible hearsay under the --

2    Judge Collings might exclude what the mother said the victim

3    said, although fresh complaint sometimes does come in, it

4    may be appropriate for an expert to rely on it, but that

5    doesn't mean he can testify about it in front of the jury.

6              MR. GRADY:  On anything like that, your Honor,

7    we'd give the Court time to rule on the issue within the

8    context of the testimony and would --

9              THE COURT:  Yes, but I don't want the expert to

10   spill out something that Judge Collings said was

11   inadmissible hearsay.

12             MR. GRADY:  Well, I think that what's referred to

13   him is an issue of purely whether things are independently

14   admissible.  Rule 703 specifically contemplates that

15   materials that are not within the confines of the hearsay

16   definition may be introduced or not -- not the exhibits.

17             THE COURT:  I've been through this.  Not

18   introduced.  I've been personally through this in a major

19   murder trial in state court.  They're not introduced.  An

20   expert can rely on them, but not separately introduced.

21             MR. GRADY:  Your Honor, the facts upon which they

22   rely derived from hearsay may be testified to by the expert

23   under Rule 703 if the Court determines that its probative

24   value substantially outweighs its prejudicial effect.  That

25   is the fact underlying the issue.

1          THE COURT:  Right.

2          MR. GRADY:  Second, with respect to --

3          THE COURT:  But you can't separately put in those

4    reports.

5          MR. GRADY:  No.

6          THE COURT:  Okay.

7          MR. GRADY:  Second, your Honor, with respect to

8    the information contained in those reports, all of it, all

9    of it is fair game for cross-examination of Dr. Ripma.

10   There is no limitation of hearsay or inadmissibility.

11         THE COURT:  If something is totem pole hearsay and

12   it doesn't fall under the fresh complaint rule or something

13   like that, I will have questions about whether the expert

14   should rely on it, but I'll handle it, not Collings.

15         MR. GRADY:  That's fine, your Honor, but --

16         THE COURT:  Judge Collings can't possibly know --

17   this is a very complicated trial, and I know more about it.

18   You can't ask a magistrate judge to make the 403 rulings if

19   he's not sitting at trial.  I'll do that.

20         MR. GRADY:  I agree, I completely agree.  I just

21   wish to make the Court aware that what facts we would

22   introduce through the experts, or even seek to introduce

23   through the experts, I think by and large are largely

24   independently admissible by way of admission of Mr. Shields.

25   There are at least two incidents which are clearly hearsay,

1    which we're not seeking to introduce reports concerning, but

2    may be relevant to cross-examining Dr. Ripma if in fact --

3    you know, and were a foundation established that these

4    police reports or similar reports are the type typically

5    relied upon by experts in the field, and that he didn't

6    consider incidents described in those reports, you know, in

7    a particular way.  With respect to -- I mean, I don't --

8    I'm --

9         THE COURT:  You know, when I see a concrete

10   dispute, I'll get there.  My point is, I'll deal with it,

11   not Judge Collings.  Judge Collings called me about this.

12   I'll deal with the 403 weighings.  He's dealing solely with

13   whether it is hearsay that is admissible in a civil trial

14   under the hearsay exceptions under police reports.  That's

15   his only mandate.  I mean, how many police reports are we

16   talking about?

17        MR. GRADY:  Oh, there were -- with the conviction

18   records, there were -- I think seven exhibits comprised -- I

19   don't know how many reports specifically, but there were

20   only portions of certain reports.  Much of what was

21   submitted to Magistrate Collings was the certified copies of

22   conviction, which I don't believe there's any dispute with

23   regard to, although there is a dispute with respect to

24   records that are not reflective of convictions.  There are

25   some instances where we have an indictment, where we have

1    charges.  Under the Static-99, those are materials

2    considered by the experts in scoring those actuarial tools,

3    and we may have to deal at trial with instances where

4    Mr. Shields is charged but not convicted because those are

5    counted under the scoring of the actuarial methods used.

6    And I would --

7              THE COURT:  There was only one, right, that I saw?

8              MR. GRADY:  There are two charges in Florida for

9    which there are no convictions.  One involved obscene phone

10   calls which Mr. Shields admitted making to Dr. Ripma.

11   Another involved an alleged attempted sexual assault on a

12   nine-year-old.  I don't know or recall specifically whether

13   there was any admission with respect to that, although I

14   believe he did admit that to Dr. Ripma as well, which would

15   make that fact independently admissible, even if the police

16   report doesn't come in.

17             THE COURT:  Sure, so if there's an admission,

18   there's an admission.  Then this is a nonissue.

19             MR. GRADY:  Yes, I think that's the case, your

20   Honor.  I really think --

21             THE COURT:  Anyway, I have other things to go on.

22   I'm going to try and reach Judge Neel and really get a sense

23   of this case.  We're marking off September 1.  If I can

24   humanly do it at the end of this month, I'm going to try to,

25   so please don't release your witnesses.  But I will try and

1    make a determination.  I'll call him.  I mean, if he says

2    the 23rd is the best case and it's even slipping beyond

3    that, this case goes to September 1.

4              MR. TENNEN:  I think he will, your Honor.

5              THE COURT:  If I can do it in a way that it

6    doesn't sort of create another four- or five-month

7    postponement, I'd prefer to do that.

8              MR. TENNEN:  They're going until 4:00 today and

9    until 3:00 tomorrow, if you want to try to reach Judge Neel.

10             MR. GRADY:  I need one minute of the Court's time.

11   There was some issue with respect to whether the

12   government -- the government may file a motion for leave to

13   depose Mr. Shields.  At the last hearing, they indicated

14   that he may testify.  The Court said he would be allowed to

15   if he asked.  It may be the government feels the need to

16   seek a deposition, and since Mr. Shields is incarcerated, we

17   would need the Court's permission.  I wish to make the Court

18   aware of that.  It may come.

19             We did not have any orders with respect to

20   sequestration of witnesses.

21             THE COURT:  Well, what if he refuses?

22             MR. GRADY:  To answer questions?  That would be

23   fine.  It would simply be an adverse inference that you

24   could take in the course of a civil proceeding.

25             THE COURT:  Okay.

1        MS. KELLEY:  He refuses.

2        THE COURT:  Excuse me?

3        MS. KELLEY:  He does refuse.

4        THE COURT:  He does refuse, so you can have the

5   adverse inference.  Okay.

6        MR. GRADY:  Okay.  We don't have the expert

7   disclosures with respect to Dr. Kriegman, either his list of

8   prior testimony or --

9        THE COURT:  You know, this can't be a -- give it

10  to them, and if not, there should be a motion to compel.

11       MR. GRADY:  Okay.

12       MS. KELLEY:  Okay.

13       THE COURT:  Okay?  The key right now is just

14  getting people in the front door.  You also have to discuss

15  with your client and get a waiver for Tomich in case there's

16  a problem there.  And you have to get him in a position

17  where he can be videotaped.  This is what we're going to do

18  in the future because this is impossible.

19       MR. GRADY:  And we still don't have their

20  exhibits' Bates numbers.  Can we have an order that they

21  provide that by Friday, the numbers within the Bates

22  production of the exhibits they're introducing at trial so

23  that we know what they are?

24       THE COURT:  Yes, so work out a date.

25       MR. GRADY:  I think by Friday of this week?

1          THE COURT:  You know what, I have another hearing.

2     People are here.  I'm going to try and go upstairs right

3     now.  What time did you say they're going to today?

4          MR. TENNEN:  To 4:00 today and 3:00 tomorrow.  The

5     clerk might be available, but --

6          MR. GRADY:  Your Honor, even if -- if we're

7     possibly going the 23rd, I really think the government is

8     entitled to know what the exhibits are that they plan to

9     introduce at trial by the end of this week.

10          THE COURT:  Today is what, Wednesday?  Come up

11     with an agreed-upon schedule or file a motion to compel.

12          MR. GRADY:  Okay.

13          THE COURT:  Okay?  That's Friday.  That's two days

14     from now.  I mean, theoretically, they should have produced

15     them already.  I agree with you.  You need to produce them.

16          THE CLERK:  Court is in recess.

17          (Adjourned, 3:35 p.m.)

18

19

20

21

22

23

24

25

Page 24

CERTIFICATE

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON              )


          I, Lee A. Marzilli, Official Court Reporter, do

hereby certify that the foregoing transcript, Pages 1

through 23 inclusive, was recorded by me stenographically at

the time and place aforesaid in Civil Action No.

07-12056-PBS, United States of America V. Jeffrey Shields,

and thereafter by me reduced to typewriting and is a true

and accurate record of the proceedings.

          In witness whereof I have hereunto set my hand

this 16th day of May, 2009.




          /s/ Lee A. Marzilli
          _____
          LEE A. MARZILLI, RPR, CRR
          OFFICIAL COURT REPORTER

0c60acac-b9d5-4ff4-bc6d-2e1240cd12ee